# IN THE COURT OF APPEALS OF IOWA

No. 18-0859
Filed February 5, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH MICHAEL FINN, II,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

A defendant appeals his sentence for three counts of assault while

participating in a felony, alleging the sentencing hearing was flawed. **AFFIRMED.**

Jamie F. Deremiah of Flanagan Law Group, PLLC, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Martha A. Trout, Assistant Attorney

General, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

In the years following their parents' divorce, the four children of Joseph Finn (Joe) and Nicole Finn (Nicole) resided with their mother. However, Joe and Nicole shared parenting of the children. Three of the children, N.F., age sixteen, J.F., age fifteen, and M.F., age fourteen, were abused and neglected while imprisoned in a single, squalid bedroom in Nicole's home.

Joe and Nicole affixed a plywood board over the window in the children's bedroom. This did not allow for ventilation or egress. With Joe's knowledge, Nicole installed an alarm on the children's bedroom to prevent the children from leaving the room without her permission. Nicole regularly refused the children permission to leave the room, even to use the bathroom. This led to the children urinating and defecating on the floor of their shared bedroom. Joe removed the carpet from the room and installed linoleum flooring. Joe and Nicole removed all furniture from the room, including bedding, mattresses, and beds. The children had limited access to nutrition and developed bedsores from sleeping on the floor. Joe last saw the children approximately three weeks before N.F.'s death.

On October 24, 2016, emergency personnel were dispatched to Nicole's home after one of the children called 911 to report that N.F. was not breathing. Upon arrival, the responders found Nicole performing CPR on N.F. N.F. was unconscious. The details concerning her physical condition and the condition of the room where she was located are horrendous and need not be discussed for the purpose of this appeal. N.F. was taken to the hospital, where she died the next day due to emaciation and denial of critical care. Although she previously achieved a recorded weight of 120 pounds, her weight at her time of death was sixty-six

pounds. J.F. and M.F. were transported to the hospital and treated for injuries that were deemed "serious." At the time of the medical examination, J.F. weighed 107 pounds and M.F. weighed seventy-five pounds. Both also exhibited injuries similar to bed sores.

Joe was charged with three counts of first-degree kidnapping, one count of child endangerment resulting in death, three counts of child endangerment causing serious injury, and three counts of neglect or abandonment of a dependent person. Nicole was charged with the same ten crimes, with an additional count of first-degree murder. Joe and Nicole's trials were severed.

After a plea agreement was reached and the State amended the trial information, Joe pled guilty to three counts of assault while participating in a felony causing serious injury, all three forcible, class "C" felonies. The court accepted the plea on March 21, 2018, when Joe admitted his actions furthered the abuse of the children. He conceded knowledge that the children were confined, that they on multiple occasions relieved themselves in their shared room, and that they snuck out to solicit money and food from neighbors. He acknowledged that he should have known that Nicole was depriving them of food. He also acknowledged that the deprivation of such food led to the serious injury and death of N.F. and serious injury to the two other children. Joe did not file a motion in arrest of judgment. He does not attack the plea proceedings on appeal. Sentencing occurred on May 4, 2018.

At sentencing, J.F. and M.F. gave victim impact statements requesting leniency for their father. Defense counsel spoke on the defendant's behalf. The defendant exercised his right to allocution.

Following the victim impact statements, statements of counsel, and the defendant's allocution, the court sentenced Joe to three ten-year sentences to run consecutively. The court stated its reasons for the sentence on the record. The court indicated that it had prepared its remarks in advance of the sentencing hearing. The court also compared the defendant's conduct to the inaction of bystanders during the Holocaust and the Rohingya conflict in Myanmar. The defendant appeals alleging the court's two statements to be improper.

**Standard of Review**

We review a district court's sentencing decision for abuse of discretion. *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018).

**Discussion**

On appeal, the defendant raises two arguments. First, he argues the district court abused its discretion by determining his sentence prior to the presentation of victim impact statements and the defendant's exercise of the right of allocution. Second, he asserts that the court's references to Myanmar and the Holocaust amount to reliance on unproven conduct. We disagree with both arguments.

**I. Sentencing Reasons**

Iowa Rule of Criminal Procedure 2.23(3)(d) provides that prior to the rendition of judgment, "counsel for the defendant, and the defendant personally, shall be allowed to address the court where either wishes to make a statement in mitigation of punishment." This right is known as the "right of allocution," and the denial of this right will result in a sentence being vacated. *State v. Lumadue*, 622

N.W.2d 302, 304 (Iowa 2001); *State v. Craig*, 562 N.W.2d 633, 637 (Iowa 1997). In addition to offering a defendant his right of allocution, prior to imposing sentence, the court must receive and examine "all pertinent information, including . . . victim impact statements." Iowa Code § 901.5 (2018).

The defendant, his attorney, and two of the defendant's children spoke in mitigation of the sentence prior to the court's imposition of the sentence. However, the defendant argues that by preparing remarks before the sentencing hearing, the court denied his right to allocution and "drained" the weight of the victim impact statements. We disagree.

First, we consider the court's statement that it prepared remarks in advance of the sentencing hearing. The court said, "Mr. Finn, I have prepared my remarks here today, which is something I have never done in sixteen years as a judge. I prepared those remarks because there are a number of things that I want to say, and I want to make sure that I don't omit them." When read out of context, this statement could lead to a conclusion that the court had made up its mind prior to the hearing. However, the court made clear that was not the case. The court recited,

> So, Mr. Finn, we are now at the point in the proceedings where I have to do my part, and that means to adjudicate this case and to impose the sentence. *So I am taking into account all of the information that I have available to me through the court file, through your statements, through the statements of counsel here, through the PSI, through these sad, sad pictures that constitute State's Exhibits 1 through 4.*
> . . .
> *But I've been listening to you as you exercised your right to allocution, and I'm disappointed in you.* After your plea I was willing to agree with you and your attorney that you accepted responsibility and that you held yourself accountable.

*But now after listening to you, I'm not so sure*. I think you're wallowing in self-pity. I think you're a bit of a manipulator yourself, consciously or subconsciously.

(Emphasis added). These remarks demonstrate that the court properly considered the evidence presented at the sentencing hearing prior to rendering sentence. Furthermore, the court explained that it took the matter of sentencing under consideration only after the allocution statement:

> You were afforded your right to allocution. You exercised that right. *Once you concluded your exercise of that right, I took the matter under consideration, and now I'm making my decision*. I'm adjudicating you guilty to each of these crimes. I'm sentencing you to an indeterminate term of ten years for each one of them. I'm running each of those terms consecutive to one another, for an effective term not to exceed thirty years.

(Emphasis added).

Given the above statements, we disagree that the sentencing court abused its discretion. There was no defect in the sentencing procedure, as the court considered "all pertinent information" prior to imposing sentence. Iowa Code § 901.5. It is evident the court carefully prepared for the sentencing hearing. However, the record does not show that the court had determined the sentence prior to the presentation of victim impact statements and the defendant's allocution.

## II. Consideration of Unproven Conduct

The defendant next argues that the sentencing court's bystander-inaction analogy shows it relied on unproven crimes or conduct. The sentencing court compared the defendant's conduct to bystander inaction during war crimes, and the defendant draws parallels from the underlying facts of the analogy to conclude that the court relied on facts not in evidence. We reject this argument.

"A district court may not consider an unproven or unprosecuted offense when sentencing a defendant unless (1) the facts before the court show the defendant committed the offense, or (2) the defendant admits it." *State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001). We find that the court below did not consider unproven or unprosecuted offenses when sentencing the defendant.

An examination of this argument reveals its flaw. Joe was charged with and pleaded guilty to serious crimes concerning the abuse of his children. The record reflects, and Joe admitted, that he knew or should have known about Nicole's abuse of the children. He enabled and at times assisted in the perpetration of abuse and neglect. The trial court drew a sharp and vivid analogy to this conduct:

> Mr. Finn, what happened here and what you were complicit in is, at the same time, heartbreaking and appalling. What you did or, maybe better put, what you failed to do, Mr. Finn, is, in a microcosm, what an entire nation of people did in the '30s and '40s, and they called it the Holocaust, what an entire nation of people are doing at this moment in the country Myanmar; that is, looking the other way when an atrocity is being committed, no worse than what all those millions of people did, but certainly no better.

The defendant asserts that, "[t]his comparison required the court to believe that Joe knew Nicole was purposefully abusing the children and that he consciously did nothing about it." He lays out facts tending to show manipulation by his ex-wife and that he did not purposefully engage in the harmful conduct. As previously noted, Joe does not argue the plea proceeding was flawed. He makes this argument solely as to sentencing.

The defendant relies on three cases for support, each of which makes clear that we must reject the defendant's approach. Each decision cited by the defendant vacated a defendant's sentence because of a trial court's improper

reliance on unproven or uncharged conduct. In *State v. Gonzalez*, 582 N.W.2d 515, 516–17 (Iowa 1998), the trial court adopted the State's sentencing recommendation after acknowledging the plea agreement provided for the dismissal of "what would probably be easily provable, five additional counts" of delivery of a controlled substance (cocaine). In *State v. Black*, 324 N.W.2d 313, 314–315 (Iowa 1982), the trial court found incarceration appropriate on an indecent exposure charge after considering the underlying facts of a dismissed burglary charge. In *State v. Messer*, 306 N.W.2d 731, 732 (Iowa 1981), the trial court acknowledged that it took into consideration "the fact that there were two other charges that were not prosecuted in this matter as part of a plea bargaining." Each of these cases is distinguishable from the instant case.

We reject the defendant's argument that the court relied upon unproven crimes and conduct in determining the defendant's sentence. Having disposed of the defendant's two arguments, we conclude there were no errors in sentencing.

We affirm the decision of the district court.

**AFFIRMED.**